[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION TO VACATE O.T.C.
The motion in question seeks to vacate an Order of Temporary Custody entered by this Court on July 30, 2002. At the time, the Department of Children and Families had invoked a ninety-six hour hold on all four R children and sought the Order for Alisha. The precipitating cause for the hold and temporary order was an injury to Alisha, who was almost 4 months old at the time. The injury was a non-displaced spiral fracture of the humerus just above the left elbow. The parents were not able to identify the cause of the injury.
On July 19th the family drove to New Jersey to conduct some business. Mom and Dad left Alisha with a relative caregiver while doing business. When they picked up the child to return home, the caregiver observed that Alisha was not using her left arm and cautioned the parents to keep an eye on her. When the family returned to Connecticut and the motel in which they were staying, Dad noticed that, when he lifted Alisha's left arm, it fell to her side without any resistance. Parents decided that something was wrong with the arm and immediately took Alisha to the emergency room.
Emergency room staff took X-rays; identified the non-displaced spiral fracture; and called Dr. Vincent J. Williams, an orthopedic surgeon, to examine and treat the child. Dr. Williams confirmed the diagnosis and recommended that the child be kept quiet and treated with care, allowing the bone to mend. The family, including Alisha, was discharged to home. Because of the nature of the injury (spiral fractures are the result of the application of great force and are seldom found in infants) the hospital notified DCF of the visit and the injury.
DCF requested that parents bring the child for an evaluation to Dr. Philip Scribano, a licensed physician employed by Connecticut Children's Medical Center as a pediatric emergency medicine attending physician and Director of the Center's Suspected Child Abuse and Neglect Program. CT Page 15955 Parents were reluctant to agree, but when threatened with the alternative of a ninety-six hour hold and an order of temporary custody, did so. The evaluation occurred on the 26th of July, five days after the child was released by the treating hospital.
Dr. Scribano reviewed medical records, the family history and conducted his own examination, including additional radiological work. Based on Dr. Scribano's recommendation, DCF invoked the ninety-six hour hold and sought the Order of Temporary Custody. The Court issued the Order of Temporary Custody.
At the Hearing on the Motion to Vacate the Order of Temporary Custody, both Dr. Scibano and Dr. Williams testified. Affidavits from Dr. Scribano (Exhibit A), DCF social worker Ines Eaton (Exhibit B) and DCF Social Worker Novelette Hinds (Exhibit C) were entered into evidence without objection. Both identified social workers testified briefly and mother testified in support of father's motion. Communications from Community Health Center and Nova discussing parents' participation in rehabilitation services were admitted as exhibits without objection. The following facts are found to be true:
 1. Between the time that social worker Hinds visited the family at home on July 19th and the time that the family left New Jersey in the evening of July 20th, Alisha suffered a non-displaced spiral fracture of the left humerus. The injury did not cause observable bruising or swelling.
 2. Parents have not identified and claim to have no knowledge of the cause of the injury. However, social worker Ines' affidavit suggests that Dad may know something more than he is saying about the cause of the injury. (Exhibit B, page 5, paragraph 4) The implication of that affidavit was not discussed by Ms Ines in her testimony and was not addressed by father in his case in support of his motion.
 3. The nature of the injury, the fact that its cause was not identified, the family's history of domestic violence, the lack of adequate housing and the family's financial status are all stresses which increase the risk of child abuse. (Testimony of Dr. Scribano)
 4. Parents have been cooperating with recommended DCF services since temporary custody of Alisha was ordered at the end of July — more than eight weeks. Alisha has been in DCF custody for one hundred thirty days. Parents have only been allowed two hours of supervised visitation a week for the four months that the Order has been in effect. During the period of temporary custody, the baby has received CT Page 15956 inpatient hospital treatment for pneumonia and has suffered repeated rashes. Neither condition existed prior to DCF custody.
 5. The Scribano examination on July 26, 2002, revealed an "alert, smiling, cooperative [child], in no acute distress. . . . There was no bruising or scars noted. . . . Extremity examination revealed full range of motion of all extremities without tenderness, except for the left upper arm. The left upper arm had minimal tenderness to palpation over the distal aspect of the upper arm. There was full use of the arm without any obvious limitation. . . ." Dr. Williams noted in his testimony that the break was fully healed four weeks after his initial examination of the infant.
 6. Although DCF has been involved with this family since March, 2002, in response to an alleged incident of domestic violence, the only question raised about the care given to any or all of the four children arises from the unexplained non-displaced spiral fracture. No physical evidence exists of abuse or harm to any of the other children.
 7. The injury was inflicted. The mechanism and circumstances are unknown.
Judge Jongbloed issued the Order of Temporary Custody on July 30, 2002, based on the finding that the child was ". . . suffering from serious physical injury. . . ." The Court determined during the Hearing of the Motion to Vacate that the moving party had the burden to prove that the reasons for the order no longer apply by a fair preponderance of the evidence. The Court concludes that father has met his burden of proof
The Court shares the concerns of DCF with respect to the family history of domestic violence, the parents' abandonment of their obligations to the New Jersey child protection agency, and the uncertainty and inadequacy of the family's housing and financial circumstances. However, the need for the Order of Temporary Custody based on the existence of a serious injury has long since passed. Furthermore, the need for an infant to form a meaningful bond with her family after spending half of her life in foster care is more compelling than protecting her from a family that has sustained three other happy and healthy children through difficult circumstances.
The family was under protective supervision in New Jersey before moving to Connecticut. Parents sought the assistance of DCF prior to the circumstance that precipitated the Order. A negligence petition is pending. Parents are in the middle of counseling programs. The Court CT Page 15957 expects that the parents and DCF will continue to cooperate with each other until the neglect petition is resolved.
 ORDER
The Order of Temporary Custody is hereby vacated.
 ___________________ Thayer Baldwin, Jr. Judge of the Superior Court
CT Page 15958